UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHANNON MAURICE HOLMES,

        Petitioner,

v.

        CIVIL NO. 2:13-CV-13215
        HONORABLE NANCY G. EDMUNDS
        UNITED STATES DISTRICT COURT

KENNETH ROMANOWSKI,

        Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY AND *LEAVE TO APPEAL IN FORMA PAUPERIS***

Shannon Maurice Holmes, ("Petitioner"), confined at the Macomb Correctional Facility in New Haven, Michigan, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed *pro se*, petitioner challenges his conviction for first-degree premeditated murder, M.C.L.A. 750.316(1)(a). For the reasons stated below, the petition for writ of habeas corpus is **DISMISSED WITH PREJUDICE.**

### I. Background

Petitioner was convicted following a jury trial in the Wayne County Circuit Court.

Petitioner provided a detailed statement of facts in his memorandum in support of the petition for writ of habeas corpus. Respondent also provided a detailed factual summary of the case, which does not essentially conflict with petitioner's statement of facts. The Court will therefore accept the factual allegations contained within the habeas petition insofar as they are consistent with the record, because the respondent has not disputed

them. *See Cristini v. McKee,* 526 F. 3d 888, 894, n. 1 (6th Cir. 2008)("When a state's return to a habeas corpus petition fails to dispute the factual allegations contained within the habeas petition, it essentially admits these allegations").  Because the facts of this case have been repeated numerous times, they need not be repeated here in their entirety. Therefore, only a brief overview of the facts is required. *See Nevers v. Killinger,* 990 F. Supp. 844, 847 (E.D. Mich. 1997).  Accordingly, this Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> This case arises from the homicide of Christopher Cser, the deceased.  He called his wife, Ann Cser, while she was driving home, sounding distraught and told her that "Shannon" stabbed him.  Ms. Cser arrived home and found her husband dead on the floor.
>
> ****************************************************************************
> Additionally, even if there was any error, plaintiff presented compelling and consistent evidence to prove that defendant was the person that committed this crime, such as: Ann Cser's testimony that the deceased made a dying declaration that defendant committed this crime; [Officer] Thompson's testimony that he back-tracked footprints in the snow leading to and from defendant's home going in the direction of the deceased's home; defendant's girlfriend, Jennifer Evans's, testimony that the knife with the deceased's blood on it once belonged to defendant; Thompson's testimony that he saw a blood spot and a puncture wound on defendant's right arm during defendant's arrest; and Michigan State Police Crime Lab Forensic Scientist Andrea Halvorson's testimony that the suspected blood stain samples taken from the knife and blue jeans that were found in the barbeque grill at defendant's home, and the suspected blood stain sample taken from defendant's door handle, all produced a DNA profile that matched the deceased.
>
> *People v. Holmes,* No. 299971, * 1, 4 (Mich.Ct.App. January 17, 2012)(internal citation omitted).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 492 Mich. 854, 817

N.W.2d 51 (2012).

Petitioner seek a writ of habeas corpus on the following ground:

Mr. Holmes was denied his Sixth and Fourteenth Amendment rights to a fair trial and due process of law through the prosecutor's improper argument, and interjection by two detectives (attributable to the prosecution) that Mr. Holmes remained silent following his arrest and *Miranda* warnings; further, defense counsel was ineffective under the Sixth Amendment for failing to object, and for 'opening the door' to one of the detectives [sic] comments.

## II.  Standard of Review

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d); *Harpster v. State of Ohio*, 128 F. 3d 322, 326 (6th Cir. 1997).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent

3

judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision

conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24. Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87.

### III. Discussion

Petitioner claims that the prosecutor committed misconduct by introducing evidence concerning petitioner's exercise of his right to remain silent after he was given *Miranda*[1] warnings following his arrest. Petitioner further claims that the prosecutor committed misconduct by arguing that petitioner's claim that a man named Shawn was responsible for the murder was a recent fabrication and by sarcastically referring to this individual as "a mythical guy named Shawn." Petitioner further claims that the prosecutor improperly argued that petitioner's DNA was included in the waistband of the jeans recovered from petitioner's home, when in fact, the DNA expert was unable to categorically state that petitioner's DNA was recovered from these pants. Petitioner further contends that trial counsel was ineffective for failing to object to the misconduct or in one instance opening

---

[1] *Miranda v. Arizona,* 384 U.S. 436, 444 (1966).

5

the door to a line of questioning concerning petitioner's exercise of his post-*Miranda* silence.  [2]

Respondent urges this Court to reject petitioner's prosecutorial misconduct claims in part because they are without merit and in part because the prosecutor's conduct was harmless error at most in light of the overwhelming evidence of guilt.  The Michigan Court of Appeals rejected at least one of petitioner's prosecutorial misconduct claims on the ground that any error was harmless in light of the "compelling and consistent evidence to prove that defendant was the person that committed this crime[.]." *Holmes,* Slip. Op. at * 4 (internal citation omitted).

"Unless its jurisdiction is at stake, a federal district court on federal habeas review 'may take up issues in whatever sequence seems best, given the nature of the parties' arguments and the interest in avoiding unnecessary constitutional decisions.'" *Dittrich v. Woods*, 602 F. Supp. 2d 802, 809 (E.D. Mich. 2009); *aff'd in part and rev'd in part on other grds,* 419 Fed.Appx. 573 (6th Cir. 2011)(quoting *Aleman v. Sternes,* 320 F. 3d 687, 691 (7th Cir. 2003)).  When a federal court is confronted with several possible grounds for adjudicating a case, any of which would lead to the same disposition of the case, "a federal court should choose the narrowest ground in order to avoid unnecessary adjudication of constitutional issues." *Id.* (citing *U.S. v. Allen*, 406 F. 3d 940, 946 (8th Cir. 2005)).  Therefore, a federal district court on habeas review of a state court conviction can proceed directly to a harmless error analysis of a habeas petitioner's claims without first reviewing

---

[2]  Respondent argues that petitioner's prosecutorial misconduct claims are procedurally defaulted because petitioner failed to object to the prosecutor's questions and arguments at trial.  Given that this Court determines that any possible misconduct was harmless error, it is unnecessary to address the procedural default issue.

6

the merits of the claim or claims, "when it is in the interest of judicial economy and brevity to do so." *Id.* (citing *Porter v. Horn*, 276 F. Supp. 2d 278, 344 (E.D. Pa. 2003). Because of the compelling evidence of guilt in this case, the Court will move directly to the issue of harmlessness as to any potential error. *See e.g. United States v. Cody,* 498 F. 3d 582, 587 (6th Cir. 2007).

It is a violation of the Due Process clause of the Fourteenth Amendment for the prosecution to use a defendant's post-arrest silence to impeach exculpatory testimony given by the defendant at trial. *Doyle v. Ohio*, 426 U.S. 610, 619 (1976). However, a violation of *Doyle* can be harmless error. *See Hayton v. Egeler,* 555 F. 2d 599, 603-04 (6th Cir. 1977). Likewise, in deciding whether prosecutorial misconduct mandates that habeas relief be granted, a federal court must apply the harmless error standard. *Pritchett v. Pitcher*, 117 F. 3d 959, 964 (6th Cir. 1997).

On direct review of a conviction, a constitutional error is considered harmless only if the reviewing court finds it was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24 (1967). In *Mitchell v. Esparza*, 540 U.S. 12, 18 (2003)(per curiam), the Supreme Court held that habeas relief would be appropriate only if a habeas petitioner could show that a state court applied harmless error review in an "'objectively unreasonable' manner."

However, in *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), the U.S. Supreme Court held that for purposes of determining whether federal habeas relief must be granted to a state prisoner on the ground of federal constitutional error, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict. "Citing concerns about finality, comity, and

7

federalism," the Supreme Court in *Brecht* "rejected the *Chapman* standard in favor of the more forgiving standard of review applied to nonconstitutional errors on direct appeal from federal convictions." *Fry v. Pliler*, 551 U.S. 112, 116 (2007)(citing *Kotteakos v. United States*, 328 U.S. 750 (1946)). The Supreme Court in *Brecht* indicated that application of the *Chapman* harmless error test by a federal court reviewing a state court conviction on habeas review would undermine a state's "interest in finality," would infringe upon a state's sovereignty over its own criminal matters, "would undercut the historic limitation of habeas relief to those who had been "'grievously wronged,'" and would impose "'significant 'social costs.'" *Fry,* 551 U.S. at 117 (quoting *Brecht,* 507 U.S. at 637). Thus, *Brecht's* more "forgiving" substantial and injurious effect test for harmless error review applies on habeas review of a state court conviction regardless of whether the state courts engaged in a harmless error analysis of the petitioner's claims. *Fry,* 551 U.S. at 121-22.

In the aftermath of *Fry*, the Sixth Circuit has concluded that the *Brecht* standard is always the test to apply to determine whether an error was harmless and it is thus no longer necessary for a habeas court to ask whether the state court unreasonably applied the *Chapman* harmless error standard before determining whether the error had a substantial and injurious effect or influence on the verdict. *Ruelas v. Wolfenbarger,* 580 F. 3d 403, 412 (6th Cir. 2009); *Wilson v. Mitchell,* 498 F. 3d 491, 503 (6th Cir. 2007); *Vasquez v. Jones*, 496 F. 3d 564, 575 (6th Cir. 2007). The Sixth Circuit observed that in light of the Supreme Court's holding in *Fry*, "a federal habeas court is never required to determine whether a state court's harmless error determination was 'unreasonable'— *Brecht* handles the work on this, too." *Ruelas*, 580 F. 3d at 412. However, although noting in *Ruelas* that the Supreme Court's holding in *Fry* "subsumes" the holding in *Esparza*, the Sixth Circuit

8

further observed the Supreme Court did not overrule *Esparza. Id.* at 413. Thus, a federal court on habeas review of a state court decision remains free to determine whether the state court's *Chapman* harmless error analysis was reasonable. If it was, than the claim should be denied. *Id.* However, a federal court is also free to proceed directly to use the *Brecht* test to determine whether the error was harmless. *Id.*

Assuming that the prosecutor's references to petitioner's post-*Miranda* silence were improper, the error was harmless in light of the overwhelming evidence of petitioner's guilt. *See e.g. Westberg v. Palmer*, 489 Fed. Appx. 883, 888 (6th Cir. 2012). Likewise, in light of the abundant evidence of petitioner's guilt, the prosecutor's remarks about the "Mythical Shawn" and his reference to petitioner's DNA being recovered from the waistband of the pants was also harmless error. *See Pritchett,* 117 F. 3d at 965. The evidence against petitioner was nothing short of overwhelming. The victim made a dying declaration to his wife, in which he identified petitioner as his assailant. Officer Thompson testified that he discovered and followed footprints in the snow leading to and from petitioner's home going in the direction of the victim's home. The victim's girlfriend admitted that the knife with the victim's blood on it had belonged to petitioner. Officer Thompson testified that he observed a blood spot and a puncture wound on petitioner's right arm at the time of his arrest. Michigan State Police Crime Lab Forensic Scientist Andrea Halvorson testified that the suspected blood stain samples taken from the knife and blue jeans that were found in the barbeque grill at petitioner's home and the suspected blood stain sample taken from petitioner's door handle all produced a DNA profile that matched the victim's DNA. Petitioner himself admitted at trial that he owned the knife found in the grill with the victim's blood on it, that he could fit into the jeans recovered from this grill with the victim's blood

on them, that he was right handed and that a shirt recovered from the grill had a blood stain only on the right sleeve, that he was wearing no socks when the police arrested him, and that one of the three socks recovered from the barbeque grill was blood stained. (Tr. IV, pp. 107-12).

Petitioner is not entitled to habeas relief on his prosecutorial misconduct claims because the Michigan Court of Appeals did not unreasonably apply the *Chapman* harmless error test in rejecting any of petitioner's claims, *See e.g. Miller v. Colson*, 694 F. 3d 691, 700-01 (6th Cir. 2012), nor can petitioner satisfy the *Brecht* test and show that this misconduct had a substantial and injurious effect or influence on the jury verdict.

Petitioner further argues that trial counsel was ineffective for failing to object to the prosecutorial misconduct or for opening the door to questions about petitioner's invocation of his right to remain silent.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 131 S. Ct. at 792). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. See *Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 131 S. Ct. at 785. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*,

131 S. Ct. at 785. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different. *See Hinkle v. Randle,* 271 F. 3d 239, 245 (6th Cir. 2001).

This Court has already determined that the prosecutor's conduct, even if improper, did not have a substantial and injurious effect on the jury verdict, as required by *Brecht* to obtain habeas relief. "The prejudice prong of the ineffective assistance analysis subsumes the *Brecht* harmless-error review." *Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009). Because the prosecutor's conduct was harmless error at most, petitioner cannot satisfy *Strickland's* prejudice requirement to prevail on his ineffective assistance of counsel claim. *See e.g. Bell v. Hurley,* 97 Fed. Appx. 11, 17 (6th Cir. 2004). Moreover, in light of the overwhelming evidence of guilt in this case, the Michigan Court of Appeals reasonably determined that petitioner was not prejudiced by counsel's failure to object to [or opening the door to] the references to petitioner's post-*Miranda* silence, *See Moreland v. Bradshaw,* 699 F. 3d 908, 928-29 (6th Cir. 2012), *cert. den.* 134 S. Ct. 110 (2013), or for failing to object to the other instances of prosecutorial misconduct. *See Cooey v. Coyle,* 289 F. 3d 882, 895 (6th Cir. 2002). Petitioner is not entitled to habeas relief on his ineffective assistance of counsel claim.

### IV. Conclusion

The Court denies the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *See also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right with respect to any of the claims. *Dell v. Straub,* 194 F. Supp. 2d 629, 659 (E.D. Mich. 2002). The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Id.*

### V. ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in forma pauperis.*

                                            s/ Nancy G. Edmunds
                                            **HON. NANCY G. EDMUNDS**
                                            UNITED STATES DISTRICT COURT

DATED: July 16, 2014